1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8  CLARENCE H. ELLIOT,                            )
                                                 )
9          Petitioner,                           )      2:08-cv-00829-GMN-RJJ
                                                 )
10 vs.                                            )      **ORDER**
                                                 )
11 BRIAN WILLIAMS, *et al.*,                      )
                                                 )
12         Respondents.                           )
   _____/

13

14         This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a

15 Nevada state prisoner who is represented by counsel.  This matter comes before the Court on the

16 merits of the amended complaint.

17 **I. Background**

18         On August 26, 1998, pursuant to a jury verdict, petitioner Clarence Elliot was convicted of

19 murdering of his wife, Barbara Elliot.  Barbara was last seen on February 19, 1996, after spending

20 the day at work at the University Medical Center (UMC), in Las Vegas, where she was employed as

21 a social worker.[1]  Barbara's car was found at Angel Park Golf Course on February 22, 1996.  On

22

23

24

25

26

_____

[1]  See Exhibits 18, 19, 20.  The summary of background facts is intended only as an overview of the case, in order to provide context for the discussion of the issues.  Any absence of mention of specific evidence in this overview does not signify that this Court has overlooked or ignored the evidence.  The Court makes no credibility findings or other factual findings regarding the truth of the evidence or statements of fact in the state court.  No statement of fact made in describing statements, testimony, or other evidence in the state court, whether in this overview or in the discussion of a particular issue, constitutes a finding of this Court.

1   May 21, 1996, Barbara's body was found in the Red Rock Canyon area, at the bottom of a wash,

2   near mile marker 14, on Nevada State Route 159.

3          When Barbara's car was found in the park, it had a blood stain in the right front passenger

4   side and there was a bullet on the right front floorboard.  Also found in Barbara's car were: loose

5   papers, a container of Wet Ones wipes with an apparent blood stain on it, a box of Benadryl, a plastic

6   Lucky's grocery bag and receipt, a cell phone, a purse, money, cigarette ashes, and latent

7   fingerprints.

8          It was learned that Barbara had gone to the Lucky's grocery store on her way home on the

9   evening of February 19, 1996.  The manager of the Lucky's store verified the receipt found in

10  Barbara's car, showing that she had purchased a red onion, roma tomatoes, a box of oyster crackers,

11  Benadryl and a meat item, and that she went through the check-out stand in the store at 5:05 p.m. on

12  February 19, 1996.

13         The State's theory of the case was that Barbara visited the Lucky's grocery store, then came

14  home, and later left home with Clarence, who took her out into the desert and killed her by shooting

15  her four times.  To substantiate this theory, the State pointed to the fact that two of the same items

16  Barbara purchased at the Lucky's store (roma tomatoes and an unopened box of oyster crackers),

17  were found in the couple's home.  A set of keys to Barbara's car were found in the Elliot's home.

18  Witnesses testified as to telephone calls with Clarence following Barbara's disappearance.  Some of

19  the State's witnesses testified that they thought Clarence Elliot did not get involved deeply or fast

20  enough in the search for Barbara.  Witnesses described Clarence as cold or unemotional regarding

21  Barbara's disappearance.  Evidence was presented that Clarence smoked and drank at times to

22  excess, and that he was a jealous husband.  Clarence owned a .38 revolver, which Barbara

23  occasionally carried in her car.  There was evidence that Barbara was killed by either a .38 revolver

24  or a .357 Magnum, but there was no evidence linking Clarence to the specific gun used to kill

25  Barbara.  No gun was found in the car or at the crime scene, there were no witnesses to the crime,

26  and there were no signs of a struggle at the Elliot home.  In its order filed March 6, 2008, the Nevada

1 Supreme Court commented that: "Elliot's murder conviction is based solely on circumstantial

2 evidence, and not overwhelmingly strong circumstantial evidence at that."  (Exhibit 45, at p. 4).

3 **II.  Procedural History**

4       In the Eighth Judicial District Court for the State of Nevada, an indictment was filed on April

5 4, 1997, charging petitioner with murder with the use of a deadly weapon, alleging petitioner shot

6 and killed his wife, Barbara Elliot.  (Exhibit 1).[2]  Following a jury trial in the Eighth Judicial District

7 Court, on August 26, 1998, petitioner was found guilty of murder in the first degree with the use of a

8 deadly weapon.  (Exhibit 13).  On December 14, 1998, the trial court sentenced petitioner to serve

9 two consecutive terms of life in prison, with the possibility of parole after 20 years for murder and

10 the deadly weapon enhancement.  (Exhibit 16).  The judgment of conviction was filed on December

11 28, 1998.  (Exhibit 16).

12       Petitioner filed a direct appeal to the Nevada Supreme Court.  (Exhibit 17).  Petitioner's

13 appellate counsel raised the following two claims: (1) the jury verdict should be reversed because the

14 state did not prove every element of the crime  beyond a reasonable doubt; and (2) the failure of law

15 enforcement to preserve potentially useful evidence deprived petitioner from receiving a fair trial.

16 (Exhibit 18).  Petitioner's original appellate counsel withdrew and new counsel was appointed.

17 (Exhibits 56, 57, 58).  Counsel filed a supplemental brief raising the following four additional

18 claims: (1) the trial court erred in admitting hearsay statements of the victim; (2) the state violated

19 petitioner's right to remain silent; (3) the state's improper closing argument denied petitioner due

20 process and the right to a fair trial; and (4) the jury instructions failed to define "deliberate" as a

21 separate element of first degree murder.  (Exhibit 20).  On February 8, 2002, the Nevada Supreme

22 Court issued its opinion affirming petitioner's conviction.  (Exhibit 22).

23       On June 7, 2002, petitioner filed a state postconviction petition for writ of habeas corpus.

24 (Exhibit 24).  In his petition, petitioner raised four grounds for relief.  The trial court appointed

25 _____

26    [2] The exhibits referenced in this order are found in the Court's record at ECF Nos. 25-30 and ECF No. 37.

1    counsel to represent petitioner.  (Exhibit 66).  The trial court held evidentiary hearings on October

2    19, 2005, and March 22, 2006.  (Exhibits 30 and 31).  The trial court issued an order on March 6,

3    2007, granting petitioner's state habeas petition.  (Exhibit 34).

4          The State filed a notice of appeal on April 25, 2007.  (Exhibit 36).  On March 6, 2008, the

5    Nevada Supreme Court issued an order reversing the trial court's order and denying relief on the

6    postconviction habeas petition.  (Exhibit 45).  Remittitur issued on April 1, 2008.  (Exhibit 47).

7          This Court received petitioner's federal petition on June 25, 2008.  (ECF No. 1).  With

8    counsel, petitioner filed a first amended petition on February 13, 2009 (ECF No. 14), and a

9    supplemental amended petition on March 31, 2009 (ECF No. 24).  Respondents moved to dismiss

10   the amended petition.  (ECF No. 37).  By order filed October 1, 2010, this Court denied the motion

11   to dismiss and directed respondents to file an answer.  Respondents filed an answer on October 27,

12   2010 (ECF No. 42), and petitioner filed a reply to the answer on November 23, 2010 (ECF No. 43).

13   **III.  Federal Habeas Corpus Standards**

14         The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

15   provides the legal standard for the Court's consideration of this habeas petition:

16            An application for a writ of habeas corpus on behalf of a person in
              custody pursuant to the judgment of a State court shall not be granted
17            with respect to any claim that was adjudicated on the merits in State
              court proceedings unless the adjudication of the claim –
18
                 (1) resulted in a decision that was contrary to, or involved an
19            unreasonable application of, clearly established Federal law, as
              determined by the Supreme Court of the United States; or
20
                 (2) resulted in a decision that was based on an unreasonable
21            determination of the facts in light of the evidence presented in the State
              court proceeding.
22

23         The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

24   in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

25   to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

26   decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

1  § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

2  Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

3  a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

4  Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

5  U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

6         A state court decision is an unreasonable application of clearly established Supreme Court

7  precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

8  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

9  principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

10  529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

11  than merely incorrect or erroneous; the state court's application of clearly established federal law

12  must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

13        In determining whether a state court decision is contrary to, or an unreasonable application of

14  federal law, this Court looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501

15  U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert.*

16  *denied*, 534 U.S. 944 (2001).  Moreover, "a determination of a factual issue made by a State court

17  shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

18  presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

19  **IV.  Discussion**

20        The Court reaches only Ground Four of the amended petition, as it squarely determines the

21  outcome of this habeas action.[3]  In Ground Four, petitioner asserts that the trial court's jury

22  instruction on premeditation and deliberation violated his due process rights.  (ECF No. 24, at pp.

23  15-18).  At trial, the state district court instructed the jury on premeditation and deliberation, as

24  follows:

25  _____

26        [3] In light of this Court's analysis of Ground Four, the Court does not reach Grounds One through Three, and therefore dismisses these grounds, without prejudice, as moot.

1

> Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing.

2

3

> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind.  For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate and premeditated murder.

4

5

6

(Exhibit 12, Instruction 8).  On direct appeal, the Nevada Supreme Court rejected petitioner's

7

challenge to the jury instruction, as follows:

8

> Last, Elliot argues that the jury was improperly instructed regarding premeditation and deliberation.  This is so, according to Elliot, because the instructions given to the jury did not properly distinguish between premeditation and deliberation.  We disagree.

9

10

> We have already rejected this argument in Garner v. State and Byford v. State.  Furthermore, we have repeatedly stated that the mere use of the instruction utilized in Elliot's trial does not constitute reversible error.  Therefore, Elliot's argument is without merit.

11

12

13

14   (Exhibit 22, at p. 9) (footnotes and citations omitted).

15         Petitioner claims that he was denied due process in violation of the Fifth and Fourteenth

16   Amendments because the trial court's jury instruction failed to adequately distinguish between the

17   elements of malice aforethought, premeditation, and deliberation.  The premeditation instruction

18   given in petitioner's trial, at Instruction 8, constitutes what is referred to as a *Kazalyn* instruction.

19   The *Kazalyn* instruction first appeared in Nevada's case law in *Kazalyn v. State*, 108 Nev. 67, 825

20   P.2d 578 (1992).

21         The Nevada Supreme Court later concluded in *Byford v. State*, 116 Nev. 215, 994 P.2d 700

22   (2000), that the *Kazalyn* instruction erroneously "blur[red] the distinction between first- and second-

23   degree murder" by failing to sufficiently distinguish between the distinct elements of deliberation

24   and premeditation required for a conviction for first-degree murder as opposed to lesser homicide

25   offenses.  *Byford*, 116 Nev. at 234-36, 994 P.2d at 713-14.  The Nevada Supreme Court approved a

26   jury instruction in lieu of the *Kazalyn* instruction that expressly and specifically distinguished

1   between the three separate elements of willfulness, deliberation, and premeditation.  The instruction

2   approved in *Byford* carried forward the concept that premeditation "may be as instantaneous as

3   successive thoughts of the mind."  The *Byford* instruction further stated, however, that "[a] mere

4   unconsidered and rash impulse is not deliberate, even though it includes the intent to kill."  The

5   approved instruction concluded: "A cold, calculated judgment and decision may be arrived at in a

6   short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to

7   kill, is not deliberation and premeditation as will fix an unlawful killing as murder of the first

8   degree."  *Byford*, 116 Nev. at 236-37, 994 P.2d at 714-15.

9        Following the *Byford* decision, the Nevada Supreme Court later held that the giving of a

10  *Kazalyn* instruction does not give rise to a federal due process violation.  *Garner v. State*, 116 Nev.

11  770, 6 P.3d 1013, 1025 (2000), *overruled on other grounds by Sharma v. State*, 118 Nev. 648, 56

12  P.3d 868 (2002).  The Nevada Supreme Court concluded that the *Byford* holding was not a holding

13  of constitutional dimension that must be retroactively applied.  *Id*.

14       The Ninth Circuit, however, held that the Nevada Supreme Court's holding in *Garner*,

15  rejecting the federal due process claim, was contrary to clearly established federal law, based entirely

16  upon controlling United States Supreme Court precedent decided prior to petitioner's trial and

17  appeal.  *Polk v. Sandoval*, 503 F.3d 903, 909-11 (9th Cir. 2007).  "It is clearly established law that, as

18  determined by the [United States] Supreme Court, that a defendant is deprived of due process if a

19  jury instruction 'ha[s] the effect of relieving the State of the burden of proof enunciated in *Winship*

20  on the critical question of petitioner's state of mind.'"  *Polk v. Sandoval*, 503 F.3d at 909-10 (citing

21  and quoting *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979); *Francis v. Franklin*, 471 U.S. 307,

22  326 (1985); *In re Winship*, 397 U.S. 358 (1970)).  In *Polk*, the Ninth Circuit held that "[the

23  petitioner's] federal constitutional right to due process was violated by use of the *Kazalyn* instruction

24  because it relieved the State of its burden of proving every element of first-degree murder beyond a

25  reasonable doubt."  *Polk,* 503 F.3d at 909.  The Court in *Polk* found that "the Nevada Supreme Court

26  erred by conceiving of the *Kazalyn* instruction issue as purely a matter of state law."  *Polk*, 503 F.3d

1    at 911.  The Nevada Supreme Court erred in concluding that giving a *Kazalyn* instruction in cases

2    predating *Byford* did not constitute a federal constitutional error.  *Id.*  "The state court failed to

3    analyze its own observations from *Byford* under the proper lens of *Sandstrom*, *Franklin*, and

4    *Winship*, and thus ignored the law the [United States] Supreme Court clearly established in those

5    decisions – that an instruction omitting an element of the crime and relieving the state of its burden

6    of proof violates the federal Constitution."  *Id.*  Finally, the Court in *Polk* ruled that where a *Kazalyn*

7    instruction is given, the finding of a due process deprivation is subject to harmless error analysis.  *Id.*

8    at 911-12.  This Court is, of course, bound by the Ninth Circuit's holding in *Polk*, that the Nevada

9    Supreme Court's conclusion that there is no federal due process violation is contrary to clearly

10   established federal law as determined by the United States Supreme Court.[4]

11           In the present case, at petitioner's trial, the state district court gave the *Kazalyn* instruction,

12   which included no language precluding a conviction for first-degree murder for a killing committed

13   following "a mere unconsidered and rash impulse."  The instruction instead included only the

14   language that premeditation could be "as instantaneous as successive thoughts of the mind."  The

15   instruction directed the jury that: "if the jury believes from the evidence that the act constituting the

16   killing has been preceded by and has been the result of premeditation, no matter how rapidly the

17   premeditation is followed by the act constituting the killing, it is willful, deliberate and premeditated

18   murder."  (Exhibit 12, Instruction 8).  Instruction 8 in the instant case violated petitioner's federal

19   due process rights, because it "relieved the State of its burden of proving every element of first

20   degree murder beyond a reasonable doubt."  *Polk,* 503 F.3d at 909.

21           The trial court's erroneous use of the *Kazalyn* instruction does end this Court's inquiry.  As

22   explained in *Polk v. Sandoval*, the Court must determine whether or not the constitutional error was

23   harmless error.  Petitioner will be entitled to relief only if "'the error had a substantial and injurious

24   _____

25           [4] This Court is aware that the Nevada Supreme Court, in *Nika v. State*, 124 Nev. 1272, 1289,
     198 P.3d 839, 850 (2008), expressed its disagreement with the Ninth Circuit's analysis in *Polk v.*
26   *Sandoval*, 503 F.3d 903, 909-11 (9ᵗʰ Cir. 2007).  This Court is bound by the Ninth Circuit's *Polk*
     decision as to the application of a clearly established federal law.

1   effect or influence in determining the jury's verdict.'" *Polk v. Sandoval*, 503 F.3d at 911 (quoting

2   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  If the record leaves the reviewing court in "grave

3   doubt" as to whether the error had such an effect, the petitioner is entitled to relief.  *Id.*

4         In *Chambers v. McDaniel*, 549 F.3d 1191 (9ᵗʰ Cir. 2008), filed after the *Polk* decision, the

5   Ninth Circuit addressed the issue of harmless error where a *Kazalyn* instruction was erroneously

6   given.  In *Chambers*, the State obtained a first-degree murder conviction, relying upon evidence "that

7   Chambers stabbed [the victim] seventeen times; that the wounds penetrated three inches into the

8   body and were located in two separate clusters of wounds; and that Chambers was not mentally

9   disturbed, but at the most merely drunk."  549 F.3d at 1200-1201.  The Ninth Circuit found that this

10  evidence "does not demonstrate the key feature of the element of deliberation: that of the

11  'dispassionate weighing process and consideration of consequences before acting.'"  *Chambers*, 549

12  F.3d at 1201 (quoting *Byford*, 994 P.2d at 714).  The Ninth Circuit concluded that, in light of the

13  weak evidence of deliberation, it could not conclude that the instructional error was harmless.  *Id.*

14  "Since we are left 'in grave doubt' about whether the jury would have found deliberation on

15  [Chambers'] part if it had been properly instructed, we conclude that the error had a substantial and

16  injurious effect or influence on the jury's verdict.'"  *Id.* (citing *Polk*, 503 F.3d at 913).

17        In the instant case, the trial record similarly gives rise to grave doubt to this Court in

18  considering whether the *Kazalyn* error had a substantial and injurious effect on the jury's verdict.

19  The State presented evidence and argued that petitioner was a jealous or spiteful man, and that this

20  lead to him murdering his wife.  The district attorney argued for the prosecution in summation: "she

21  was beginning to have problems in her marriage and those problems were brought about by drinking

22  and some jealousy and possessiveness."  (Exhibit 11, p. 116).  In the closing argument, the district

23  attorney argued:

24              The motive was jealousy, divorce and money.  We did hear just little
              bits and pieces of jealousy, but enough from her friends and relatives
25              to get a feel that everybody had the same sense of what was going on
              in her life.  This means that Clarence Elliot was jealous of her.
26

9

1   (Exhibit 11, p. 117).  The district attorney further argued at closing argument that "there is no doubt

2   this is wilful, premeditated.  It certainly was deliberate.  How much more wilful, deliberate and

3   premeditated do we need than five bullets ripping through the body?"  (Exhibit 11, p. 115).

4   The prosecution further argued in summation: "And the only thing else I have to add to the motive of

5   jealousy, divorce and money – well, wait a minute, is that it was fueled by alcohol."  (Exhibit 11, at

6   p. 179).

7          Since the purported motive for the killing was jealousy, based on this theory, the killing

8   would have occurred in the heat of passion, or as the result of a rash, impulsive act, perhaps with the

9   defendant under the influence of alcohol.  The issues surrounding premeditation and deliberation,

10  and the effects of alcohol intoxication, as well as the effects of sudden rage or anger, may never have

11  been considered by the jury because of the erroneous *Kazalyn* jury instruction.  As noted in *Polk*, the

12  *Kazalyn* instruction collapsed the three elements of first-degree murder (willfulness, deliberation,

13  and premeditation).  *Polk*, 503 F.3d at 911.  The Court in *Polk* specifically found that the *Kazalyn*

14  instruction "left no room for deliberation or 'coolness and reflection' and permitted the jury to

15  convict Polk of first-degree murder even if the determination to kill was a 'mere unconsidered and

16  rash impulse' or was 'formed in passion.'" *Id.* (citing *Byford*, 994 P.2d at 714).  Similarly, in the

17  present case, the erroneous *Kazalyn* instruction permitted the jury to convict petitioner of first-degree

18  murder, even if the killing was based on a rash impulse or in the heat of passion.

19         Moreover, the fact that the victim in the present case was shot five times is not, in and of

20  itself, determinative on the issue of harmless error.  The defendant in *Polk* fired multiple times, and,

21  similar to the present case, the prosecution relied on the multiple shots to establish the requisite state

22  of mind for first degree murder.  *Polk*, 502 F.3d at 911-914.  And, as noted above, the defendant in

23  *Chambers* struck the victim multiple times with a knife.  *Chambers*, 549 F.3d at 1200-1201.  In

24  neither case was the fact of multiple shots or knife strikes determinative of the harmless error issue.

25  As in *Polk* and *Chambers*, the evidence in the present case did not preclude a verdict of second-

26  degree murder.

1    In the instant case, it is reasonably probable that the *Kazalyn* instructional error resulted in

2  petitioner being convicted of first-degree murder without the jury having first found the essential

3  element of deliberation.  The evidence against petitioner was not so great as to preclude a verdict of

4  second-degree murder.  In fact, in its order filed March 6, 2008, the Nevada Supreme Court

5  commented that: "Elliot's murder conviction is based solely on circumstantial evidence, and not

6  overwhelmingly strong circumstantial evidence at that."  (Exhibit 45, at p. 4).  In light of the weak

7  evidence of deliberation in the present case, this Court concludes that the *Kazalyn* error was not

8  harmless under the *Brecht* standard.  Rather, the record in the present case leaves this Court in grave

9  doubt as to whether the *Kazalyn* error had a substantial and injurious effect in determining the jury's

10  verdict.  *See Polk v. Sandoval*, 503 F.3d at 911 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637

11  (1993)).

12    In conclusion, the *Kazalyn* instruction given by the state district court in petitioner's trial

13  deprived him of due process of law.  The *Kazalyn* instructional error did not constitute harmless

14  error.  This Court further finds that the Nevada Supreme Court's decision filed February 8, 2002,

15  affirming petitioner's conviction and upholding the use of the *Kazalyn* instruction, was contrary to

16  clearly established United States Supreme Court law.  Therefore, this Court will grant a writ of

17  habeas corpus, as further specified below.

18  **V.  Conclusion**

19    **IT IS THEREFORE ORDERED** that the federal petition for a writ of habeas corpus is

20  **GRANTED.**

21    **IT IS FURTHER ORDERED** that petitioner shall be released from custody within **30 days**,

22  unless the State files a written election in this matter within the 30-day period to retry petitioner and

23  thereafter commences jury selection in the retrial within **120 days** following the election to retry

24  petitioner.

25    **IT IS FURTHER ORDERED** that the Clerk shall enter judgment in favor of petitioner and

26  against respondents, granting the petition for a writ of habeas corpus.

1    **IT IS FURTHER ORDERED** that the Clerk of Court is directed to **SEND**, via certified

2  mail, a copy of this order and the judgment to the Clerk of the Eighth Judicial District Court for the

3  State of Nevada.

4    **DATED** this 23rd day of September, 2011.

5

6    _____
     Gloria M. Navarro
7    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26