1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CLARENCE H. ELLIOT,                )
                                   )
            Petitioner,            )          2:08-cv-00829-GMN-RJJ
                                   )
vs.                                )          **ORDER**
                                   )
BRIAN WILLIAMS, *et al.*,          )
                                   )
            Respondents.           )
_____)

11   This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a

12   Nevada state prisoner, Clarence H. Elliot, who is represented by counsel.  Before the Court is petitioner's

13   motion for release on personal recognizance or bail pending appellate review of the Court's decision

14   conditionally ordering his release.  (ECF No. 50.)  Also before the Court is respondents' motion for stay

15   (ECF No. 55), to which petitioner has responded (ECF No. 56).

16   **I. Background and Procedural History**

17   Before addressing the instant motions, the Court presents a brief overview of this case.  The full

18   recitation of the facts in this action can be found in the Court's decision granting habeas relief.  (*See* ECF

19   No. 45.)  In the Eighth Judicial District Court for the State of Nevada, an indictment was filed on April

20   4, 1997, charging petitioner with murder with the use of a deadly weapon, alleging petitioner shot and

21   killed his wife, Barbara Elliot.  (Exhibits to Supp. Am. Pet. Ex. 1, ECF No. 27.)  Following a jury trial

22   in the Eighth Judicial District Court, on August 26, 1998, petitioner was found guilty of murder in the

23   first degree with the use of a deadly weapon.  (*Id*. Ex. 13, ECF No. 28.)  On December 14, 1998, the trial

24   court sentenced petitioner to serve two consecutive terms of life in prison, with the possibility of parole

25   after 20 years for murder and the deadly weapon enhancement.  (*Id*. Ex.16.)  The judgment of conviction

26   was filed on December 28, 1998.  (*Id*.)

1    Petitioner filed a direct appeal to the Nevada Supreme Court. (*Id.* Ex.17.) On February 8, 2002,

2    the Nevada Supreme Court issued its opinion affirming petitioner's conviction. (*Id.* Ex. 22.) On June

3    7, 2002, petitioner filed a state post-conviction petition for writ of habeas corpus. (*Id.* Ex. 24.) The trial

4    court appointed counsel to represent petitioner and held evidentiary hearings on October 19, 2005, and

5    March 22, 2006. (*Id.* Exs. 30, 31, ECF No. 29; Exhibits to Mot. to Dismiss Ex. 66, ECF No. 37.) The

6    trial court issued an order on March 6, 2007, granting petitioner's state post-conviction petition.

7    (Exhibits to Supp. Am. Pet. Ex. 34). The State filed a notice of appeal on April 25, 2007. (*Id.* Ex. 36.)

8    On March 6, 2008, the Nevada Supreme Court issued an order reversing the trial court's order and

9    denying relief on the post-conviction petition. (*Id.* Ex. 45.) Remittitur issued on April 1, 2008. (*Id.* Ex.

10   47.)

11   This Court received petitioner's federal petition on June 25, 2008. (ECF No. 1.) With counsel,

12   petitioner filed a first amended petition on February 13, 2009 (ECF No. 14), and a supplemental

13   amended petition on March 31, 2009 (ECF No. 24). On September 23, 2011, the Court issued an order

14   granting the habeas petition and requiring, among other things, petitioner's release from custody within

15   thirty days unless the State files a written election to retry petitioner. (ECF No. 45.) On October 12,

16   2011, the State filed a notice of appeal of this Court's order. (ECF No. 49.)

17   **II. Discussion**

18   "[A] district court retains jurisdiction to issue orders regarding the custody or enlargement of a

19   [habeas corpus] petitioner even after an appeal has been taken from the order granting or denying habeas

20   corpus relief." *Stein v. Wood*, 127 F.3d 1187, 1190 (9th Cir. 1997) (citation omitted).

21   Federal Rule of Appellate Procedure 23(c) provides:

22

23        While a decision ordering the release of a prisoner is under review, the
     prisoner must – unless the court or judge rendering the decision, or the

24   court of appeals, or the Supreme Court, or a judge or justice of either
     court orders otherwise – be released on personal recognizance, with or

25   without surety.

26

1   Thus, when the State appeals a decision granting a writ of habeas of corpus, the prisoner must be

2   released from custody on personal recognizance, while the decision is under review, with or without

3   surety, "unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court,

4   or a judge or justice of either court orders otherwise."[1]   "Rule 23(c) undoubtedly creates a presumption

5   of release from custody . . . ."   *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987).   However, the

6   presumption "may be overcome if the traditional stay factors tip the balance against it."   *Id.* at 777.   "[A]

7   court making an initial custody determination under Rule 23(c) should be guided not only by the

8   language of the Rule itself but also by the factors traditionally considered in deciding whether to stay

9   a judgment in a civil case."   *Id.*

10      Federal Rule of Appellate Procedure 8 provides: "A party must ordinarily move first in the

11   district court for . . . a stay of the judgment or order of a district court pending appeal . . . ." Fed. R. App.

12   P. 8(a)(1); *see also* Fed. R. Civ. P. 62(c) ("While an appeal is pending from a . . . final judgment that

13   grants . . . an injunction, the court may suspend, modify . . . or grant an injunction on terms for bond or

14   other terms that secure the opposing party's rights.").

15      Essentially, the questions of whether to stay the decision granting a writ of habeas corpus and

16   whether to release the prisoner pending appeal are "mirror images of each other."   *Franklin v. Duncan*,

17   891 F. Supp. 516, 518 (N.D. Cal. 1995).   Accordingly, a court considers the following factors in making

18   a Rule 23 (c) inquiry:

19          (1) whether the stay applicant has made a strong showing that he is likely
           to succeed on the merits; (2) whether the applicant will be irreparably
20          injured absent a stay; (3) whether issuance of the stay will substantially
           injure the other parties interested in the proceeding; and (4) where the
21          public interest lies.

22

23      ────────────────
      [1] In *Marino v. Vasquez*, 812 F.2d 499 (9th Cir. 1987), the Ninth Circuit left open the question
24   of whether a conditional grant of a writ of habeas corpus such as is presented in the instant case is
      governed by Rule 23(b) or instead by Rule 23(c). *Marino,* 812 F.2d at 508 n.12. A principal functional
25   difference between the two provisions is that – as the Supreme Court later confirmed in *Hilton* – Rule
      23(c) establishes a presumption in favor of release while Rule 23(b) does not. *See id.* However, since
26   *Marino*, several courts, including the United States Supreme Court in *Hilton*, have assumed that
      conditional writs fall within the scope of Rule 23(c). *See Hilton v. Braunskill*, 481 U.S. 770, 774 (1987);
      *Foster v. Lockhart*, 9 F.3d 722, 727 (8th Cir. 1993); *Etherly v. Schwartz*, 649 F. Supp. 2d 892, 904 (N.D.
      Ill. 2009)*; Franklin v. Duncan*, 891 F. Supp. 516, 518 (N.D. Cal. 1995).

1   *Haggard v. Curry*, 631 F.3d 931, 934-35 (9th Cir. 2010) (citing *Hilton*, 481 U.S. at 776).  The first factor

2   – whether the State has made a strong showing that it is likely to succeed on its appeal of the district

3   court's decision – is the "most important factor."  *Id*. at 935.  Where the State shows a strong likelihood

4   of its success on appeal, "or where, failing that, it can nonetheless demonstrate a substantial case on the

5   merits, continued custody is permissible if the second and fourth factors . . . militate against release."

6   *Hilton*, 481 U.S. at 778.  On the other hand, "[w]here the State's showing on the merits falls below this

7   level, the preference for release should control."  *Id*.  In applying the factors, a court may consider: (1)

8   the possibility of risk of flight; (2) any risk posed to the public by the prisoner's release; and (3) the

9   State's interest in continuing custody and rehabilitation pending a final determination of the case.  *Id*.

10  at 777.  The State's interest in continued custody will be the strongest "where the remaining portion of

11  the sentence to be served is long, and weakest where there is little of the sentence remaining to be

12  served."  *Id*.  The petitioner's interest "in release pending appeal, always substantial, will be strongest

13  where the [three] factors [– possibility of flight, danger to the public, and the State's interest in continued

14  custody and rehabilitation –] are weakest."  *Id*.

15      Petitioner argues that respondents are unable to make a strong showing of their likelihood of

16  success on the merits.  Even if respondents could make such showing, petitioner contends that the other

17  factors weigh in favor of his release.

18      Respondents, on the other hand, argue that they have either a strong likelihood of success on

19  appeal, or a substantial case on the merits, because two other cases from the District of Nevada raising

20  the same issue in this case are before the Ninth Circuit Court of Appeals.  Additionally, respondents

21  reassert their argument from their answer that the *Nika* case, decided by the Nevada Supreme court in

22  2008, calls into question the holding reached by the Ninth Circuit Court of Appeals in *Polk*, a 2007 case.

23      1.  Respondents' Likelihood of Success on the Merits

24      Respondents argue that there is a strong likelihood of their success on appeal, or at the very least,

25  a substantial case on the merits.  According to respondents, the Nevada Supreme Court's decision in

26  *Nika v. State*, 198 P.3d 839 (Nev. 2008) states that the Ninth Circuit's decision in *Polk v. Sandoval*, 503

4

F.3d 903 (9th Cir. 2007) relied on an erroneous assumption in concluding that the *Kazalyn* instruction violated the Due Process Clause of the Fourteenth Amendment.  Respondents assert that the *Nika* court's holding that *Byford v. State*, 994 P.2d 700 (Nev. 2000), announced a change in, rather than a clarification of, Nevada state law, controls the constitutional question presented in this case.

This Court granted a writ of habeas corpus in this case because it concluded that the *Kazalyn* instruction given by the state district court in petitioner's trial deprived him of due process of law. Additionally, the Court concluded that habeas relief was required because the *Kazalyn* instructional error did not constitute harmless error and that the Nevada Supreme Court's decision filed February 8, 2002, affirming petitioner's conviction and upholding the use of the *Kazalyn* instruction, was contrary to clearly established United States Supreme Court law.  In its order, this Court noted the Nevada Supreme Court's decision in *Nika*, and the *Nika* decision's disagreement with *Polk*, but stated that it remained bound by the Ninth Circuit Court of Appeals' *Polk* decision as to the application of a clearly established federal law irrespective of the holding in *Nika*. (ECF No. 45.)

The premeditation instruction given in petitioner's trial, at Instruction 8, constitutes what is referred to as a *Kazalyn* instruction. The *Kazalyn* instruction first appeared in Nevada's case law in *Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992).

The Nevada Supreme Court later concluded in *Byford v. State*, 994 P.2d 700 (Nev. 2000), that the *Kazalyn* instruction erroneously "blur[red] the distinction between first- and second-degree murder" by failing to sufficiently distinguish between the distinct elements of deliberation and premeditation required for a conviction for first-degree murder as opposed to lesser homicide offenses.  *Byford*, 994 P.2d at 713-14.  The Nevada Supreme Court approved a jury instruction in lieu of the *Kazalyn* instruction that expressly and specifically distinguished between the three separate elements of willfulness, deliberation, and premeditation.  The instruction approved in *Byford* carried forward the concept that premeditation "may be as instantaneous as successive thoughts of the mind."  The *Byford* instruction further stated, however, that "[a] mere unconsidered and rash impulse is not deliberate, even though it includes the intent to kill."  The approved instruction concluded: "A cold, calculated judgment

5

1   and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even

2   though it includes an intent to kill, is not deliberation and premeditation as will fix an unlawful killing

3   as murder of the first degree." *Byford*, 994 P.2d at 714-15.

4         Following the *Byford* decision, the Nevada Supreme Court later held that the giving of a *Kazalyn*

5   instruction does not give rise to a federal due process violation.  *Garner v. State*, 6 P.3d 1013, 1025

6   (Nev. 2000), *overruled on other grounds by Sharma v. State*, 56 P.3d 868 (Nev. 2002).  The Nevada

7   Supreme Court concluded that the *Byford* holding was not a holding of constitutional dimension that

8   must be retroactively applied.  *Id.*

9         The Ninth Circuit Court of Appeals, however, held that the Nevada Supreme Court's holding in

10  *Garner*, rejecting the federal due process claim, was contrary to clearly established federal law, based

11  entirely upon controlling United States Supreme Court precedent decided prior to petitioner's trial and

12  appeal.  *Polk v. Sandoval*, 503 F.3d 903, 909-11 (9th Cir. 2007).  "It is clearly established law, as

13  determined by the [United States] Supreme Court, that a defendant is deprived of due process if a jury

14  instruction 'ha[s] the effect of relieving the State of the burden of proof enunciated in *Winship* on the

15  critical question of petitioner's state of mind.'"  *Polk*, 503 F.3d at 909-10 (citing and quoting *Sandstrom*

16  *v. Montana*, 442 U.S. 510, 521 (1979); *Francis v. Franklin*, 471 U.S. 307, 326 (1985); *In re Winship*,

17  397 U.S. 358 (1970)).  In *Polk*, the Ninth Circuit Court of Appeals held that "[the petitioner's] federal

18  constitutional right to due process was violated by use of the *Kazalyn* instruction because it relieved the

19  State of its burden of proving every element of first-degree murder beyond a reasonable doubt."  *Polk*,

20  503 F.3d at 909.  The court in *Polk* found that "the Nevada Supreme Court erred by conceiving of the

21  *Kazalyn* instruction issue as purely a matter of state law."  *Polk*, 503 F.3d at 911.  The Ninth Circuit

22  Court of Appeals stated that the Nevada Supreme Court erred in concluding that giving a *Kazalyn*

23  instruction in cases predating *Byford* did not constitute a federal constitutional error.  *Id.*  "The state

24  court failed to analyze its own observations from *Byford* under the proper lens of *Sandstrom*, *Franklin*,

25  and *Winship*, and thus ignored the law the [United States] Supreme Court clearly established in those

26  decisions – that an instruction omitting an element of the crime and relieving the state of its burden of

6

proof violates the federal Constitution." *Id*. Finally, the court in *Polk* ruled that where a *Kazalyn* instruction is given, the finding of a due process deprivation is subject to harmless error analysis. *Id.* at 911-12.

In *Nika v. State*, 198 P.3d 839, 849 (Nev. 2008) the Nevada Supreme Court reaffirmed that its decision in *Byford* announced a change in state law and not a clarification of state law. The *Nika* court opined that the fundamental flaw in the *Polk* court's analysis was its assumption that *Byford* merely reaffirmed a distinction between "willfulness," "deliberation," and "premeditation." *Id*. According to the *Nika* court, the *Polk* court relied on this erroneous assumption in concluding that the *Kazalyn* instruction violated the federal Constitution by omitting an element of the offense. *Id*. The *Nika* court stated that its decision in *Byford* to change Nevada law was "a matter of interpreting a state statute, not a matter of constitutional law." *Id*. at 850. In support of its conclusion that *Byford* raised only a state law question – whether it announced a change in or clarification of state law –  and was not of constitutional dimension, the *Nika* court cited to two United States Supreme Court cases: *Bunkley v. Florida*, 538 U.S. 835, 839-40 (2003) and *Fiore v. White*, 531 U.S. 225, 228 (2001).[2]  *Id*. at 850 n.66. Additionally, the *Nika* court opined that the *Kazalyn* instruction was not unconstitutional because "Nevada was not alone in the view . . . that the terms 'willful,' 'deliberate,' and 'premeditated' need not be separately defined, but rather those terms constituted a single phrase." *Id*. at 847.  In particular, the *Nika* court found that West Virginia, Alabama, Maryland, and Mississippi's interpretations aligned with the *Kazalyn* instruction. *Id*.  After noting that California and Tennessee, in contrast, ascribe distinct meanings to "willful," "deliberate," and "premeditated," the *Nika* court reasoned that the differing decisions among the jurisdictions "demonstrate that the meaning ascribed to these words is not a matter of constitutional law." *Id*. at 851.

---

[2]  The *Nika* court acknowledged that the change effected by *Byford* could have due process implications in its application if the law changed to narrow the scope of a criminal statute before a defendant's conviction was final because, under such circumstances, due process would require that the change be applied to that defendant. *Id*. at 850.

7

First, the *Nika* decision misreads the rationale supporting the Ninth Circuit Court of Appeals' decision in *Polk*. In reaching its conclusion that the *Kazalyn* instruction violated the Due Process Clause, the *Polk* court relied on the body of United States Supreme Court law holding that "a defendant is deprived of due process if a jury instruction 'ha[s] the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind.'" *Polk*, 503 F.3d at 909-10 (citing and quoting *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979); *Francis v. Franklin*, 471 U.S. 307, 326 (1985); *In re Winship*, 397 U.S. 358 (1970)). This inquiry is separate and distinct from the question of whether a state court's interpretation of a state statute is a change to or clarification of a state law.

Second, the *Nika* court's rationale framing the *Kazalyn/Byford* issue as merely an issue of state law dodges the due process implications of the *Kazalyn* instruction. As discussed above, in support of its conclusion that the *Byford* decision raised only a state law question – whether it announced a change in or clarification of state law – and was not of constitutional dimension, the *Nika* court cited to two United States Supreme Court cases: *Bunkley v. Florida*, 538 U.S. 835 (2003) and *Fiore v. White*, 531 U.S. 225 (2001). *Nika*, 198 P.3d at 850 n. 66.

In *Fiore*, the petitioner was convicted of violating a Pennsylvania statute prohibiting the operation of a hazardous waste facility without a permit. *Fiore*, 531 U.S. at 226. Even though the petitioner possessed a permit, he was convicted of violating the statute because he had deviated so dramatically from the permit's terms. *Id*. After the petitioner's conviction became final, the Pennsylvania Supreme Court interpreted the statutory language "without a permit" for the first time, holding that one who deviated from his permit's terms was not a person "without a permit," and thus, such a person had not violated the statute. *Id*. at 226-267. The United States Supreme Court granted *certiorari* in part "to decide when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review." *Id*. at 226. The United States Supreme Court certified a question to the Pennsylvania Supreme Court in order to determine if its decision concerning the interpretation of "without a permit" constituted a change in or

1   clarification of Pennsylvania law. *Id.* at 228.  The Pennsylvania Supreme Court's response indicated that

2   the decision merely clarified the statute and was the law of Pennsylvania at the time of petitioner's

3   conviction.  *Id.*  Accordingly, the United States Supreme Court held it need not decide the retroactivity

4   issue because the Pennsylvania decision was not new law.  *Id.*  Instead, the United States Supreme Court

5   held that the petitioner's conviction violated due process because Pennsylvania law – as properly

6   interpreted – required petitioner to have acted without possessing a permit, and Pennsylvania had not

7   presented any evidence on that basic element of the crime.  *Id.*

8          In *Bunkley*, the petitioner was convicted under a  Florida statute of burglary in the first degree

9   because he was armed with a dangerous weapon – a pocketknife with a blade of 2 ½ to 3 inches in

10  length.  *Bunkley*, 528 U.S. at 837.  Under Florida law a "common pocketknife" is an exception to the

11  definition of a "weapon."  *Id.*  After petitioner's conviction became final, the Florida Supreme Court

12  interpreted the meaning of the term "common pocketknife," concluding that a knife with a blade of 3

13  $^3/_4$  inches was included within the exception.  *Id.*  The United States Supreme Court concluded that

14  *Fiore* controlled the result in the case.  *Id.* at 840.  The United States Supreme Court remanded the case

15  to the Florida Supreme Court in order for it to determine whether, in light if its decision interpreting the

16  term "common pocketknife," petitioner's pocketknife of 2 ½ to 3 inches fit within the exception at the

17  time his conviction became final.  *Id.* at 842.  The Supreme Court stated that "[t]he proper question

18  under *Fiore* is not just *whether* the law changed. Rather, it is *when* the law changed."  *Id.* (emphasis in

19  original).  This is so because "application of the due process principles of *Fiore* may render a

20  retroactivity analysis unnecessary."  *Id.* at 840 (internal quotations and citation omitted).  Retroactivity

21  is not at issue if a state court's later statutory interpretation is a correct statement of the law when the

22  petitioner's conviction became final.  *Id.*

23         *Fiore* and *Bunkley* address the distinction between a clarification of state law and a change in

24  state law and the due process implications arising from such a distinction.  In particular, *Fiore* and

25  *Bunkley* squarely delineate what the Due Process Clause requires when a state court's interpretation of

26  a statutory phrase or term occurs after the petitioner's conviction becomes final.  Neither case addresses

9

1  the due process concerns arising from a state court's interpretation that collapses three statutory terms

2  into one.  Instead, *Sandstrom*, *Franklin*, and *Winship* are the controlling line of United States Supreme

3  Court cases for that inquiry.  As in *Polk*, the state court in *Nika* failed to analyze its own observations

4  from *Byford* under the proper lens of *Sandstrom*, *Franklin*, and *Winship*, and consequently ignored

5  clearly established United States Supreme Court law.  The *Nika* court's reliance on *Fiore* and *Bunkley*

6  is unavailing because neither decision controls the question of whether the *Kazalyn* instruction violates

7  due process.  Rather, *Fiore* and *Bunkley* are inapposite to the issue in *Polk* and the issue in this case.

8  Regardless of whether *Byford* amounted to a clarification of or change in state law, the *Kazalyn*

9  instruction in existence before *Byford* violated the federal Constitution because it omitted an element

10  of the crime and relieved the state of its burden of proof.

11      Finally, as to the decisions of West Virginia, Alabama, Maryland, and Mississippi, whose

12  instructions are apparently in accord with *Kazalyn,* the Court notes that the mere fact that Nevada was

13  "not alone" in concluding that the terms "willful," "deliberate," and "premeditated" need not be

14  separately defined does not mean that its conclusion comports with the dictates of the United States

15  Constitution.  On a related note, the Court is not persuaded by respondents' argument that they are likely

16  to succeed on the merits of their appeal because two other cases currently pending before the Ninth

17  Circuit raise similar issues as in this case.  Certainly, a decision from the Ninth Circuit Court of Appeals

18  in any of these three cases may implicate the disposition of the others, but having several cases before

19  the Ninth Circuit has no bearing on the strength of respondents' position.

20      In sum, the Nevada Supreme Court's decision in *Nika* does not impugn the Ninth Circuit Court

21  of Appeals' holding in *Polk* that the *Kazalyn* instruction violates the Due Process Clause of the

22  Fourteenth Amendment.  The Nevada Supreme Court's conception of the *Kazalyn* instruction issue as

23  purely a matter of state law is erroneous.  "[T]he question of whether there is a reasonable likelihood that

24  the jury applied an instruction in an unconstitutional manner is a 'federal constitutional question.'" *Polk*,

25  503 F.3d 911 (quoting *Francis*, 471 U.S. at 316.)  As explained by *Polk*, an instruction omitting an

26  element of a crime and relieving the state of its burden of proof violates the federal Constitution.

1    Accordingly, respondents fail to demonstrate that they are likely to succeed on the merits of their

2    appeal, or that they have a substantial case on the merits on the merits of their appeal, based on their

3    argument that *Polk* is infirm in light of *Nika*. Respondents present no other arguments in support of their

4    success on appeal. Consequently, respondents have failed to show that the first factor weighs in their

5    favor.

6        2.  Remaining Factors

7    As discussed above, in applying the remaining factors, a court may consider: (1) the possibility

8    of risk of flight; (2) any risk posed to the public by the prisoner's release; and (3) the State's interest in

9    continuing custody and rehabilitation pending a final determination of the case. *Hilton*, 481 U.S. at 777.

10   Petitioner asserts that the remaining factors weigh in favor of his release because he has already

11   served fifteen years in prison, there is no likelihood that he will flee the jurisdiction, and he is 71 years

12   old and not in particularly good health. Additionally, petitioner argues that his conviction was obtained

13   by way of an unconstitutional trial, and that potentially protracted litigation on appeal may result in his

14   death in prison before the conclusion of the appellate process.

15   Respondents maintain that they have a strong interest in petitioner's continued custody because

16   petitioner's sentence requires him to serve a minimum of forty years in prison, and he has only served

17   fifteen years. Respondents further argue that it would be a waste of judicial resources for the State to

18   retry petitioner while his appeal is pending and that the public interest plainly weighs in their favor

19   because petitioner was convicted of first-degree murder with the use of a deadly weapon.

20   Aside from arguing that petitioner's first-degree murder conviction patently demonstrates the risk

21   of harm to the public and that the public will be injured if petitioner is released without restrictions and

22   flees, respondents make no other showing that petitioner is dangerous or likely to flee. Respondents'

23   reliance on petitioner's murder conviction as evidencing his danger to the community is misplaced in

24   light of this Court's conclusion that the conviction was obtained in violation of the United States

25   Constitution. Moreover, as this Court noted in its September 23, 2011 order, the Nevada Supreme Court

26   commented in its order filed March 6, 2008 that: "Elliot's murder conviction is based solely on

11

circumstantial evidence, and not overwhelmingly strong circumstantial evidence at that." (Exhibits to Supp. Am. Pet. Ex. 45, at p. 4.) In cases where there is overwhelming evidence of guilt of a dangerous crime, the public interest weighs in favor of keeping the petitioner incarcerated. *See Hernandez v. Dugger*, 839 F. Supp. 849, 851 n.2 (M.D. Fla. 1993); *see also Walberg v. Israel*, 776 F.2d 134, 136 (7th Cir. 1985) (pre-*Hilton* case). This is not such a case. Furthermore, respondents fail to articulate or substantiate any basis underlying their conclusion that petitioner presents a flight risk. Respondents bear the burden of rebutting Rule 23(c)'s presumption in favor of release. Conclusory arguments are insufficient to meet such a burden.

As to the State's interest in continued custody and rehabilitation, respondents are correct that this factor weighs in their favor. The State's interest in continued custody will be the strongest "where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Hilton*, 481 U.S. at 777. The minimum duration of petitioner's sentence is forty years. Because petitioner has only served fifteen years of his sentence, the State has a strong interest in petitioner's continued custody.

### 3.  Balance Weighs in Favor of Release

Even though respondents have shown that the State has a strong interest in petitioner's custody because many years remain on his sentence, respondents have failed to show that they have a strong likelihood of success on the merits or even a substantial case on the merits of their appeal. Because the first factor – likelihood of success on the merits – is the "most important," and "[w]here the State's showing on the merits falls below this level, the preference for release should control," the Court concludes that petitioner is entitled to release pending appeal under Fed. R. App. P. 23(c). *See Haggard v. Curry*, 631 F.3d at 935; *see Hilton*, 481 U.S. at 778.

Although the Court orders petitioner's release pending appeal, the Court is mindful of several concerns raised by respondents. Respondents request that the Court issue a temporary stay to allow them to seek a stay from the Ninth Circuit Court of Appeals. The Court grants respondents' motion in this respect and issues a temporary stay of its September 23, 2011 order to allow respondents to seek a stay

pending appeal from the Ninth Circuit Court of Appeals pursuant to Fed. R. App. P. 8(a)(2)(A)(ii).  *See Duran v. Cate*, 2011 WL 1584894, at *3, 2011 U.S. Dist. LEXIS 45226, at *8 (S.D. Cal. Apr. 27, 2011); *Martorana v. Mendoza-Powers*, 2010 WL 2794362, at *2, 2010 U.S. Dist. LEXIS 80039, at *5-6 (E.D. Cal. July 14, 2010).

Additionally, the Court agrees with respondents that petitioner's retrial while this case is pending on appeal could result in a waste of resources should this Court's rulings be overturned.  Accordingly, the Court stays the requirement that the State elect to retry petitioner within thirty days of its September 23, 2011 order and commence jury selection within 120 days of that election.  The Court stays this aspect of its order until the appeals in this case are concluded or at the expiration of the time for respondents to seek further appellate review. *See Franklin v. Duncan*, 891 F. Supp. 516, 521 (N.D. Cal. 1995); *Miller v. Fleming*, 2006 WL 1030200, at *2, 2006 U.S. Dist. LEXIS 26968, at *3-5 (W.D. Wash. Apr. 3, 2006).

Last, in ordering petitioner's release pending appeal, a federal district court may impose bail and conditions on his release.  *O'Brien v. O'Laughlin*, 130 S. Ct. 5, 7 (2009).  The Court finds that restrictions on petitioner's release will guard against the risk to the public. *See Grube v. Blades*, 2006 WL 516753, at *2, 2006 U.S. Dist. LEXIS 19214, at *4-5 (D. Idaho Feb. 28, 2006).  Petitioner represents that he does not have a current passport and that he would agree to any conditions of release imposed by the Court.  Petitioner asks that he be released on his personal recognizance, but states that he can post reasonable bail in the amount of $50,000.00.  Therefore, petitioner shall be entitled to release pending the decision of the Ninth Circuit Court of Appeals, subject to the conditions imposed by the Court.

The Court refers the matter of bail and the conditions of petitioner's release to the Magistrate Judge assigned to this case.  *See Mosley v. Cullen*, 2010 WL 5387655 (N.D. Cal. Dec. 21, 2010).  The Magistrate Judge shall make a determination on bail and conditions, after receiving any necessary information from the parties and Pretrial Services, within thirty days after the expiration of the temporary sixty-day stay, so long as no other stay imposed by the Ninth Circuit Court of Appeals is in effect. Petitioner shall not be released until bail, if any, and the conditions of his release, if any, are determined

1   by the Magistrate Judge.  If the Magistrate Judge imposes bail, it must be in a practicable amount that

2   petitioner can reasonably be expected to raise.  *See O'Brien*, 130 S. Ct. at 7.  The Court leaves it to the

3   discretion of the Magistrate Judge whether to require petitioner's personal appearance to acknowledge

4   bail and the ordered conditions of release, to allow him to appear telephonically, or to not require his

5   appearance at all.  If the Magistrate Judge requires petitioner's personal appearance, then the Nevada

6   Department of Corrections shall produce petitioner for a hearing as required by the Magistrate Judge.

7   **III.  Conclusion**

8          **IT IS THEREFORE ORDERED** that this Court's temporary stay issued October 21, 2011

9   (ECF No. 57) is **LIFTED**.

10          **IT IS FURTHER ORDERED** that petitioner's motion for release (ECF No. 50) is **GRANTED**

11   in part and **DENIED** in part.

12          **IT IS FURTHER ORDERED** that respondents' motion for stay (ECF No. 55) is **GRANTED**

13   in part and **DENIED** in part.

14          **IT IS FURTHER ORDERED** that pursuant to Federal Rule of Appellate Procedure 8(a)(1), the

15   September 23, 2011 order of this Court, and the accompanying judgment (ECF Nos. 45, 46), are

16   **STAYED for SIXTY (60) DAYS** from the date this order is filed to allow respondents time to seek a

17   stay pending appeal from the Ninth Circuit Court of Appeals.  Unless subsequently modified by this

18   Court or the Court of Appeals, this stay shall lift automatically without further order of this Court

19   **SIXTY(60) DAYS** from the date this order is filed.  Upon lift of the stay, and if no other stay is in place,

20   within **THIRTY (30) DAYS** the Magistrate Judge **SHALL** determine bail, if any, and petitioner's

21   conditions of release, if any.  Petitioner **SHALL** be released from prison in accordance with the

22   Magistrate Judge's determination.  Any violation of any of the conditions imposed by the Magistrate

23   Judge **SHALL** subject petitioner to immediate arrest.

24          **IT IS FURTHER ORDERED** that as soon as possible, the clerk **SHALL** provide a copy of this

25   order to the Magistrate Judge assigned to the case and to Pretrial Services, which, unless otherwise

26   ordered by this Court, or the Magistrate Judge, shall be responsible for supervising petitioner's release

as long as this order remains in effect.

      **IT IS FURTHER ORDERED** that the requirement in this Court's September 23, 2011 order that the State elect to retry petitioner within thirty days of the September 23, 2011 order is **STAYED until NINETY (90) DAYS** after the later of the conclusion of any proceedings seeking appellate or *certiorari* review of the Court's judgment, if affirmed, or the expiration of the time for seeking such appeal or review.

      **IT IS FURTHER ORDERED** that if petitioner is released and the Ninth Circuit Court of Appeals vacates this Court's September 23, 2011 order, then petitioner **SHALL** report to the Northern Nevada Correctional Center for intake within forty-eight (48) hours of the Ninth Circuit Court of Appeals' decision.

      Dated this 25th day of October, 2011.

_____
Gloria M. Navarro
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26